UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LANISHA W. on behalf of A.W.,

                           Plaintiff,

           v.

FRANK BISIGNANO,[1] Commissioner of
  Social Security,

                           Defendant.
_____

|  |  |
|---|---|
|  | **DECISION**<br>**and**<br>**ORDER** |
|  | **22-CV-740-LGF**<br>(**consent**) |

APPEARANCES:        HILLER COMERFORD INJURY & DISABILITY LAW PLLC
                             Attorneys for Plaintiff
                             IDA M. COMERFORD, and
                             REBECCA M. KUJAWA, of Counsel
                             6000 North Bailey Avenue
                             Suite 1A
                             Amherst, New York  14226

                             MICHAEL DiGIACOMO
                             UNITED STATES ATTORNEY
                             Attorney for Defendant
                             Federal Centre
                             138 Delaware Avenue
                             Buffalo, New York  14202
                                     and
                             TIMOTHY A. RAZEL, and
                             SERGEI ADEN
                             Special Assistant United States Attorneys, of Counsel
                             Social Security Administration
                             Office of General Counsel
                             Office of Program Litigation, Office 2
                             6401 Security Boulevard
                             Baltimore, Maryland  21235

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On May 19, 2025, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 12).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on February 17, 2023 (Dkt. 7), and by Defendant on April 13, 2023 (Dkt. 9).

## BACKGROUND

Plaintiff Lanisha W. ("Plaintiff"), acting on behalf of her minor child, A.W. ("A.W."), brings this action under the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA") on February 9, 2017 ("the application date"), for child Supplemental Security Income ("SSI") under Title XVI of the Act ("disability benefits").  AR[2] at 142, 179, 587. Plaintiff alleges A.W. became disabled on October 1, 2015, prior to attaining age 18, based on attention deficit/hyperactivity disorder ("ADHD").  AR at 173.  Plaintiff's application initially was denied on April 26, 2017, AR at 70-81, and at Plaintiff's timely request, AR at 82-84, on October 3, 2018, an administrative hearing was held in Buffalo, New York before Administrative Law Judge ("ALJ") Brian LeCours ("ALJ LeCours").  AR at 30-59 ("the first hearing").  Appearing and testifying at the first hearing were Plaintiff, represented by Nicholas Divirgilio, Esq., as well as A.W.

On December 4, 2018, the ALJ issued a decision denying Plaintiff's claim, AR at 9-29 ("first ALJ decision"), which Plaintiff timely appealed to the Appeals Council.  AR at

---

[2] References to "AR" are to the Bates-stamped pages of the administrative record electronically filed by Defendant on December 23, 2022 (Dkt. 6).

82-84.  On September 23, 2019, the Appeals Council denied Plaintiff's request for review, AR at 1-6, thus rendering the first ALJ decision the Commissioner's final decision at that time.  On November 22, 2019, Plaintiff commenced an action in this court seeking review of the first ALJ decision.  *See Lanisha W. o.b.o. A.W. v. Comm'r of Soc. Sec.*, 19-CV-1589S (W.D.N.Y.) ("*Lanisha W.*").  In a Decision and Order filed December 11, 2020 ("the D&O"), the Commissioner's decision was reversed and the case was remanded for further administrative proceedings including a new administrative hearing and decision.  *Lanisha W.*, 19-CV-1589S, Dkt. 14 (W.D.N.Y. Dec. 11, 2020); 2020 WL 7296752 (W.D.N.Y. Dec. 11, 2020); AR at 763-76.[3]  By Order dated February 3, 2021, the Appeals Council ("Appeals Council's order") vacated the first ALJ decision and remanded the matter to the ALJ for further administrative proceedings consistent with the D&O including a new administrative hearing and taking any action necessary to complete the administrative record and issue a new decision. AR at 777-80 (remand order).

Accordingly, a second administrative hearing, was held on August 2, 2021, via teleconference, before ALJ Mary Mattimore ("ALJ Mattimore") in Buffalo, New York.  AR at 680-96 ("second hearing").  Appearing and testifying at the second hearing were Plaintiff's attorney, Anthony DeMarco, Esq. ("DeMarco"), and impartial medical expert psychologist Richard M. Anderson ("Dr. Anderson").  ALJ Mattimore observed that Plaintiff was not present, nor had Plaintiff executed releases authorizing the SSA to obtain A.W.'s medical records, yet proceeded with the second hearing to obtain Dr. Anderson's testimony.  At the second hearing's conclusion, ALJ Mattimore announced a

---

[3] Subsequent references to "*Lanisha W.*" are to the Westlaw citation, and the Bates-stamped page in the administrative record.

show cause order would be issued seeking Plaintiff's authorization for the release of
A.W.'s records.  AR at 695.  On January 13, 2022, and May 5, 2022, supplemental
administrative hearings were held via teleconference, before ALJ Stephen Cordovani
("the ALJ").  AR at 649-78 ("first supplemental hearing"), 679-702 ("second
supplemental hearing").[4]  Plaintiff, represented by DeMarco, A.W., and Dr. Anderson
appeared at both the first and second supplemental hearings, with Plaintiff and Dr.
Anderson testifying at both supplemental hearings, and A.W. also testifying at the
second supplemental hearing.  On May 31, 2022, the ALJ issued a decision ("second
ALJ decision"), finding A.W. is not disabled.  On September 28, 2022, Plaintiff
commenced the instant action seeking review of the second ALJ decision denying A.W.
disability benefits.

On February 17, 2023, Plaintiff moved for judgment on the pleadings (Dkt. 7)
("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion
for Judgment on the Pleadings (Dkt. 7-1) ("Plaintiff's Memorandum").  On April 13, 2023,
Defendant moved for judgment on the pleadings (Dkt. 9) ("Defendant's Motion"),
attaching Commissioner's Brief in Support of the Commissioner's Motion for Judgment
on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 on
Social Security Cases (Dkt. 9-1) ("Defendant's Memorandum").  Filed on May 3, 2023,
was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support
for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10) ("Plaintiff's Reply").  Oral
argument was deemed unnecessary.

---

[4] The second supplemental hearing was held because updated school and medical records for A.W.,
although requested, had not yet been obtained.

Based on the following, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED.  The matter is REMANDED to the Commissioner for further proceedings.

## **FACTS**[5]

When Plaintiff Lanisha W. ("Plaintiff"), applied on February 9, 2017, for childhood disability benefits on behalf of her minor child based on ADHD, A.W., born on September 8, 2009, was 7 years old, and is now 16 years old.  AR at 142, 173.  As of the first supplemental hearing, A.W. lived with her mother and one-year old sister.  AR at 653.  Although A.W.'s father was incarcerated from 2010 to 2015, she regularly visited him in prison, and established a stronger relationship with her father upon his release in 2015, but A.W.'s father was later re-incarcerated and murdered in prison in 2016.  AR at 1409.  Plaintiff attends regular classes in school with some accommodations for her ADHD, but does not have an Individual Education Program ("IEP").  AR at 634-35.

It is undisputed that because of her ADHD, A.W. is unable to focus and stay still, is very hyperactive, talkative, easily forgets things and is very defiant.  AR at 173.  In addition to ADHD, A.W. has oppositional defiant disorder ("O.D.D."), anxiety disorder, adjustment disorder, excoriation disorder (skin picking), atopic dermatitis (eczema), and trichotillomania (hair pulling).  AR at 587.

A.W. receives primary medical care at Allentown Pediatric/Adolescent Med., LLC ("Allentown Pediatrics"), where her primary care providers include Danielle M. Conley, M.D. ("Dr. Conley"), and pediatric nurse practitioner ("NP") Mary T. Shepard ("NP

---

[5] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

Shepard"). AR at 264-92, 1011-1115, 1391-1402. From April 1, 2015 to January 3, 2017, A.W. received treatment for her mental health impairments from Spectrum Human Services ("Spectrum"), where she saw as her therapists Licensed Master Social Worker ("LMSW") Renee Blujus ("LMSW Blujus"), and Licensed Clinical Social Worker ("LCSW") Dawn Sainsbury ("LCSW Sainsbury"). AR at 292-395, 436-64, 991-1004. Beginning January 24, 2017 and continuing until November 20, 2017, A.W. received mental health treatment at Child and Family Services ("C&F"), where her therapist was LMSW Janelle Taylor ("LMSW Taylor"). AR at 466-561. A.W. resumed mental health treatment with C&F from January 14, 2019 through July 28, 2020, where her therapist was LCSW Rachel Herberger ("LCSW Herberger"). AR at 1116-1385.

In connection with this disability benefits claim, on April 18, 2017, A.W. underwent a consultative Child Psychiatric Evaluation ("psychiatric evaluation") by psychologist Janine Ippolito, Psy.D. ("Dr. Ippolito"), AR at 396-402. ("Dr. Ippolito's opinion"). Based on the psychiatric evaluation, Dr. Ippolito diagnosed A.W. with ADHD, excoriation disorder (skin picking),[6] and trichotillomania (hair pulling),[7] and assessed A.W. with moderate limitations in attending to, following, and understanding age-

---

[6] "Dermatillomania, also known as skin picking disorder or excoriation disorder, is a mental health condition where you compulsively pick at your skin. This can cause injuries, infections and scarring, leading to stress, anxiety and a reduced sense of well-being. This condition is often treatable with a combination of medication and therapy." Dermatillomania (Skin Picking), *available at* https://my. clevelandclinic.org/ health/diseases/22706-dermatillomania-skin-picking, *last visited*: Sept. 15, 2025.

[7] Trichotillomania or
        hair-pulling disorder, is a mental health condition. It involves frequent, repeated and irresistible urges to pull out hair from your scalp, eyebrows or other areas of your body. You may try to resist the urges, but you can't stop. Trichotillomania is part of a group of conditions known as body-focused repetitive behaviors.
        Pulling out hair from the scalp often leaves patchy bald spots. This can cause a lot of distress and can affect your work, school and social life. You may go to great lengths to hide the hair loss.
Trichotillomania (hair-pulling disorder), *available at* https://www.mayoclinic.org/diseases-conditions/ trichotillomania/symptoms-causes/syc-20355188, *last visited* Sept. 15, 2025.

appropriate directions, sustaining concentration and completing age-appropriate tasks, and adequately maintaining social behavior with moderate limitations.  AR at 400.  Dr. Ippolito recommended A.W. be evaluated for special education placement based on behavioral problems, and that A.W. continue with psychological and psychiatric treatment which was expected to be on-going given the pervasive nature of A.W.'s psychiatric condition with prognosis fair to good.  *Id*.

On April 25, 2017, State Agency consultant psychologist B. Stouter, Ph.D. ("Dr. Stouter"), reviewed A.W.'s records and diagnosed ADHD.  AR at 63-64 ("Dr. Stouter's opinion").  Dr. Stouter assessed the effect of A.W.'s ADHD on A.W.'s ability to function in six separate domains of functioning under which childhood disability is based.[8]  *Id*. at 64-65.  In particular, Dr. Stouter assessed that A.W. had no limitation in the domains of acquiring and using information, as well as moving about and manipulating objects, and a less than marked limitation in the domains of attending and completing tasks, interacting and relating with others, caring for yourself, and health and physical well-being.  *Id*.

Following remand from this court, on January 27, 2022, A.W. underwent a second consultative psychiatric evaluation by psychologist Marisol Valencia-Payne, Psy.D. ("Dr. Valencia-Payne"), AR at 1407-13 ("Dr. Valencia-Payne's opinion").  Based on the psychiatric evaluation, Dr. Valencia-Payne diagnosed A.W. with ADHD, inattentive type, major depressive disorder, recurrent moderate, and adjustment disorder assessed A.W. with mild to moderate limitations in sustaining concentration, completing age-appropriate tasks, adequately maintaining appropriate social behavior,

---

[8] These domains of functioning particularly relevant here are discussed in detail below.  *See* Discussion, *infra*, at 11, 13-15.

learning in accordance with cognitive functioning, interacting adequately with peer and adults, opining these limitations were not sufficiently significant to interfere with A.W.'s ability to function on a daily basis.  AR at 1402.  Dr. Valencia-Payne recommended A.W. continue with her special education placement and recommended A.W. for individual psychological therapy based on behavioral problems, and A.W.'s prognosis was fair.  *Id*.

Most recently, A.W. attended Buffalo Academy of Science Charter School ("BASCS"), where Colleen Harrison ("Harrison"), was her English/Language Arts ("ELA") teacher for 6th grade.  AR at 953.  On August 2, 2021, Harrison completed a Teacher Questionnaire ("Teacher Questionnaire"), AR at 953-60, indicating A.W. was reading at grade level 2-3, A.W. had a 504 special education placement for seating and focusing but no IEP.  AR at 953.  The Teacher Questionnaire provides for separate assessments of several activities related to each of the six the domains of functioning. *Id*. at 954-59.  Most relevantly, A.W. was assessed as having a "serious problem" with regard to three of ten separately listed activities in the domain of caring for herself, and an "obvious problem" with another activity.  *Id*. at 958.  Serious and obvious problems were also assessed with regard to numerous activities in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, but Harrison was unable to provide any assessment as to the domains of moving about and manipulating objects, and health and physical well-being because A.W. was attending school only on-line because of restrictions imposed on schools in response to the COVID-19 pandemic.  *Id*. at 954-59.

On February 8, 2022, BASCS's school social worker Kathryn Logronio ("Logronio"), completed a Teacher Questionnaire, AR at 975-88, indicating A.W. had numerous problems, ranging from slight to very serious, with various activities under the domains of acquiring and using information, attending and completing tasks, interacting relating with others, and caring for herself, but no problems in the domain of moving about and manipulating objects, and the domain of health and physical well-being was not assessed. *Id*.

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[9] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original). Indeed, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics in original).

**2.    Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). Pursuant to the applicable regulations, in determining eligibility for disability benefits as a child, the Commissioner must follow a three-step analysis for disability benefits for a child younger than age 18, 20 C.F.R. § 416.924, *see Miller v. Comm'r of Soc. Sec.*, 409 Fed.Appx. 384, 386 (2d Cir. 2010) (child), in contrast to a five-step analysis for disability

---

[9] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

benefits for an adult, *i.e.*, age 18 or older, 20 C.F.R. § 416.920, *see Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986) (adult).

For disability benefits as a child, the inquiry has three steps including (1) whether the child is engaged in substantial gainful activity ("SGA"), 20 C.F.R. § 416.924(b); (2) if the claimant has not been engaged in SGA, whether the child has a medically determinable impairment that is "severe," 20 C.F.R. § 416.924(c); and (3) if the child does have a severe impairment, whether such impairment meets or is medically or functionally equal to an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1 ("the Listings").  Relevant to the third step, where, as here, the alleged disability is based on a mental impairment, to determine whether a claimant meets the "functional equivalence" of a listed impairment, the child's functional limitations are evaluated with regard to six domains of functioning ("functioning domains" or "domains"), including,

> (i) Acquiring and using information;
> (ii) Attending and completing tasks;
> (iii) Interacting and relating with others;
> (iv) Moving about and manipulating objects;
> (v) Caring for yourself; and,
> (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(i)-(vi).

A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two or more domains of functioning, or in an "extreme" limitation in at least one domain of functioning.[10]  20 C.F.R. § 419.926a(e)(2).

---

[10] A "marked" limitation is defined as more than moderate but less than extreme, with standardized testing scores at least two but less than three standard deviations below the mean, with day-to-day functioning in domain-related activities consistent with such score, and with regard to the domain of health and physical

In the second ALJ decision, ALJ Cordovani found that A.W., born September 8, 2009, was a school-age child[11] upon applying for disability benefits on February 9, 2017, and an adolescent[12] as of the May 31, 2022, the date of the second ALJ decision. AR at 587.  There is no evidence A.W. has ever engaged in substantial gainful activity ("SGA").  Id.  A.W. has the severe impairments of ADHD, O.D.D., anxiety disorder, adjustment disorder, excoriation disorder, atopic dermatitis, and trichotillomania, but despite a report documenting obstructive sleep apnea, such condition did not cause more than minimal limitations and thus was not severe, and A.W. did not have an impairment or combination of impairments medically or functionally equaling the severity of an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, (20 C.F.R. §§ 416.924, 416.925, and 416.926), AR at 588-99, such that A.W. was not disabled since applying for disability benefits on February 9, 2017.  AR at 600.

3.    **Analysis**

In support of her motion, Plaintiff argues that in the second ALJ decision, the ALJ violated the Appeals Council's order by failing to properly evaluate the domains of functioning, Plaintiff's Memorandum at 15-18, and failing to follow the remand order with regard to the domain of health and physical well-being.  Id. at 18-23.  In opposition, Defendant argues that the ALJ's analysis is reasonable and sufficient, Defendant's Memorandum at 20-23, the ALJ complied with the remand order, id. at 23-27, and substantial evidence supports the ALJ's determination that A.W. did not have a marked

---

well-being, frequent episodes of illness or exacerbation of the impairments consistent with the regulations.  20 C.F.R. § 416.926a(e)(2) and (3).

[11] A "school-age child" is defined as a child 6 to 12 years of age.  20 C.F.R. § 416.926a(g)(2)(iv).

[12]  An "adolescent" is defined as a child age 12 to 18 years of age.  20 C.F.R. § 416.926a(g)(2)(v).

limitation in the domain of health and physical well-being. *Id*. at 27-30.  In reply, Plaintiff summarizes her previous arguments that the second ALJ decision is not supported by substantial evidence in the record because the ALJ failed to conduct the required analysis of the domains of functioning including separately addressing the individual domains, Plaintiff's Reply at 1-3, and failed to follow the remand order with respect to the domain of health and physical well-being. *Id*. at 3-5.  A thorough review of the record establishes that the ALJ failed to comply with the remand order, and thus the D&O, particularly with regard to assessing the domain of health and physical well-being, requiring remand for further administrative proceedings directed to this issue.

Both Plaintiff and Defendant focus on the domain of health and physical well-being, particularly as it relates to A.W.'s excoriation disorder and trichotillomania. Significantly, given the ALJ found A.W. has a marked limitation in the domain of caring for herself, a determination that substantial information in the record supports that A.W. also has a marked limitation in the domain of health and physical well-being, the record will establish that A.W. has a marked limitation in at least two of the domains of functioning which would dictate a finding of disabled based on the criteria for childhood disability.  20 C.F.R. § 419.926a(e)(2) (marked limitation in two or more domains of functioning is the equivalent of meeting a listed impairment).  Because Plaintiff bears the burden of proof of proving disability, *see*, *c.f.*, *Barry v. Colvin*, 606 Fed.Appx. 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." (citing *Talavera v. Astrue,* 697 F.3d 145, 153 (2d Cir.2012))), the court thus considers whether

substantial evidence supports Plaintiff's argument that A.W. has a marked limitation in

the domain of health and physical well-being.

Relevantly, the regulation pertaining to the domain of health and physical well-

being provides

> (l) Health and physical well-being. In this domain, we consider the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that we did not consider in paragraph (j) of this section. When your physical impairment(s), your mental impairment(s), or your combination of physical and mental impairments has physical effects that cause "extreme" limitation in your functioning, you will generally have an impairment(s) that "meets" or "medically equals" a listing.
>
> (1) A physical or mental disorder may have physical effects that vary in kind and intensity, and may make it difficult for you to perform your activities independently or effectively. You may experience problems such as generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue, psychomotor retardation, allergic reactions, *recurrent infection*, poor growth, bladder or bowel incontinence, or local or generalized pain.
>
> (2) In addition, the medications you take (e.g., for asthma or depression) or the treatments you receive (e.g., chemotherapy or multiple surgeries) may have physical effects that also limit your performance of activities.
>
> (3) Your illness may be chronic with stable symptoms, or episodic with periods of worsening and improvement. We will consider how you function during periods of worsening and how often and for how long these periods occur. You may be medically fragile and need intensive medical care to maintain your level of health and physical well-being. In any case, as a result of the illness itself, the medications or treatment you receive, or both, you may experience physical effects that interfere with your functioning in any or all of your activities.
>
> (4) Examples of limitations in health and physical well-being. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.
>
> > (i) You have generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy

or stamina), or psychomotor retardation because of your impairment(s).
(ii) You have somatic complaints [physical complaints not clearly explained by a medical condition] related to your impairments (e.g., seizure or convulsive activity, headaches, incontinence, *recurrent infections*, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia).
(iii) You have limitations in your physical functioning because of your treatment . . . .
(iv) You have exacerbations from one impairment or a combination of impairments that interfere with your physical functioning.
(v) You are medically fragile and need intensive medical care to maintain your level of health and physical well-being.

20 C.F.R. § 416.926a(l)(3) (italics and ellipses added).

In the first ALJ decision, ALJ LeCours gave Dr. Stouter's opinion significant weight, observing it was consistent with Dr. Ippolito's opinion, and not contradicted by any other medical evidence.  AR at 18.  District Judge William M. Skretny, however, observed that with respect to the domain of health and physical well-being, Dr. Stouter found A.W. was less than markedly limited, yet relied only on NP Shepard's March 22, 2017 report, AR at 1093-94, noting that Plaintiff, A.W.'s mother "expressed concern about hair loss and orders for antibiotics."  *Lanisha W*., 2020 WL 7296752, at *5; AR at 773 (citing AR at 18 (citing AR at 1093-94 (NP Shepard reporting Plaintiff was "concerned about [A.W.'s] hair loss from pulling out due to behavior.  Ordered antibiotic for cellulitis.")))  Because the administrative record was devoid of any medical opinions regarding the physical impact of A.W.'s picking conditions, *i.e.*, excoriation disorder and trichotillomania, for which Judge Skretny found in the administrative record "multiple references to open wounds, infections, scarring, and course of antibiotics," Judge Skretny found that ALJ's granting Dr. Stouter's opinion significant weight was

unsupported, *id*., and did not constitute substantial evidence on which ALJ LeCours

could rely. *Lanisha W.*, 2020 WL 7296752, at * 5; AR at 774.

     Consistent with Judge Skretny's D&O, contrary to Dr. Stouter's brief description

of NP Shepard's March 22, 2017 report limiting A.W.'s picking condition to a "concern"

Plaintiff expressed about hair loss, a plain reading of the report provides Plaintiff

brought A.W. to Allentown Pediatrics on March 17, 2022, because A.W. had been

"picking at scalp for the past few months, some hair loss noted.  [A.W.] also has a

history of picking at skin.  Currently in counseling."  AR at 1093.  The report continues

that "Mom in tears – was a walk in to office tonight with concerns of hair loss in scalp –

but it is being pulled out due to behavior.  Has started with a different counselor but is

still waiting to be seen by psychologist. . . .  Mom [Plaintiff] is also concerned because of

bleeding in scalp due to constant pulling at hairs."  *Id*.  NP Shepard assessed A.W. with

"cellulitis[13] of head [any part except face]," and "acute lymphadenitis[14] of face, head,

and neck."  *Id*. at 1094.  NP Shepard prescribed antibiotics for both cellulitis and

lymphadenitis.  *Id*.  A plain reading of NP Shepard's March 22, 2017 report along with

---

[13] Cellulitis is
> a spreading skin infection, most commonly of the lower leg. It's caused by bacteria entering through a break in the skin.
> The affected skin is swollen, painful and warm to the touch. The infection can cause a fever and become very serious, involving deeper tissues.
> The condition often clears up with antibiotic medicine.

Cellulitis, *available at* https://www.mayoclinic.org/diseases-conditions/cellulitis/symptoms-causes/syc-20370762, *last visited* September 15, 2025.
Although usually an infection of the skin, if severe or left untreated, cellulitis "can spread into tissue under the skin, the lymph nodes and the bloodstream."  *Id*.

[14] "Lymphadenitis is the medical term for inflamed and enlarged lymph nodes. It is usually due to an infection. Lymph nodes are filled with white blood cells that help your body fight infections. When lymph nodes become infected, it's usually because an infection started somewhere else in your body."
Lymphadenitis, *available at* https://www.hopkinsmedicine.org/health/conditions-and-diseases/lymphadenitis, *last visited* September 15, 2025.

the rest of the administrative record thus establishes that Dr. Stouter's description of

A.W.'s "hair loss from pulling," along with ALJ LeCours's single reference,

fundamentally disregards the seriousness of A.W.'s excoriation disorder and

trichotillomania despite the plethora of other references in the administrative record.

A few notable examples include an August 29, 2016 treatment note by NP

Shepard documenting a well-child check (annual physical) describing A.W. as "covered

with old scabs, scars and multiple open, picked at oozing sores some starting with

induration [thickening and hardening skin] on left arm and right thigh."  AR at 1084.  NP

Shepard diagnosed A.W. with cellulitis for which mupirocin and sulfamethoxazole-

trimethoprim (topical antibiotics) were prescribed.  *Id*. at 1085.

On November 8, 2016, A.W. presented at Allentown Pediatrics because she was

scratching and digging at her skin.  AR at 1090.  Plaintiff reported A.W. "[h]as one area

on top of scalp as well as two areas on her back that she has scratched open," and

"noticed pus coming from the area on her head.  [A.W.] is scratching and itching all the

time."  *Id*.  Upon examination, NP Shepard observed a 6-7 mm red open area on the

crown of A.W.'s head with induration and hair loss.  *Id*.  A.W. was covered with scars

from previous picking, had two large 1 cm areas on the upper back at the shoulder

blades that were "picked raw - red and open also with induration."  *Id*. at 1091.  NP

Shepard assessed cellulitis of the head and trunk for which topical antibiotics were

prescribed.  *Id*.

At a therapy session at C&F on June 14, 2017, LMSW Taylor reported A.W. "had

fresh sores on her face which she was picking, and has scars all over her arms and

face from continuous picking."  AR at 521.  LMSW Taylor noted A.W.'s skin picking was

"becoming worse" with the increase attributed to stress and changes A.W. experienced after her father was murdered in November 2016.  AR at 521.

On November 20, 2017, LMSW Taylor noted that Plaintiff reported that because of the lesions on A.W.'s head, and scars on her arms, Child Protective Services ("CPS") investigated Plaintiff for possible child abuse.  AR at 506.

At a March 8, 2018 appointment at Allentown Pediatrics, Plaintiff complained A.W. was picking at her skin, and NP Shepard observed A.W. with "[s]cars all over, two small 2 mm open areas - one on right forearm and one on left lower leg.  On buttocks has four red, raised indurated areas - dime sized, nic le [*sic*] sized and two are quarter sized."  AR at 1100-01.  NP Shepard assessed cellulitis for which topical antibiotics were prescribed.  *Id*. at 1101.  There are multiple other references to A.W. engaging in skin picking and hair pulling in the administrative record.  *See*, *e.g.*, AR at 1067, 1071-72, 1087-88, 1093-95, 1108-09, 1193, 1222, 1230, 1246-47, 1270-71, 1308-09, 1320, 1346, 1379.

Defendant argues that despite these multiple references establishing A.W. engaged in skin picking and hair pulling, nothing in the record suggests these conditions impaired A.W.'s "physical *functioning*" or establish "physical functional deficits." Defendant's Memorandum at 20 (italics in original).  In support of this argument, Defendant references § 416.926a(l)(3) and Social Security Ruling ("SSR") 09-8p,[15] 2009 WL 396030, at *2 ("SSR 09-8p").  *Id*.  A plain reading of § 416.926a(l)(3) reveals

---

[15] "SSR" refers to "Social Security Rulings" which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.  These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted."  20 C.F.R. § 402.35(b)(1).

the regulation provides that a mental or physical disorder may have physical effects that interfere with a claimant's functioning. Further, SSR 09-8p clarifies that physical effects, including, *inter alia*, recurrent infections, "can determine whether a child feels well enough and has sufficient energy to engage in age-appropriate activities, either alone or with other children." 2009 WL 396030, at *3.

It is significant that none of the opinions in the record addresses the impact of A.W.'s excoriation disorder and trichotillomania, including whether the recurrent infections and open sores had any impact on A.W.'s ability to engage in age-appropriate activities. Moreover, despite Judge Skretny's specific finding that ALJ LeCours's opinion regarding the domain of health and physical well-being was not supported, upon remand, the ALJ arranged for impartial medical expert Dr. Anderson, a psychologist, to testify at the second hearing, as well as the first and second supplemental hearings, as to any *physical* effects of A.W.'s skin picking and hair pulling on health and physical well-being. Dr. Anderson repeatedly testified at all three hearings that these conditions can be associated with anxiety and adjustment disorders, AR at 616, 658-60, 687. At the first supplemental hearing, Dr. Anderson equivocally testified that these conditions *may* have met the criteria for a marked limitation at one point, but "there was definite improvement in October 2019." AR at 663-64.[16] At the second hearing and second

---

[16] The court notes that more recent medical records do not refer to A.W. engaging in skin picking and hair pulling, *see*, *e.g.*, AR at 1357 (C&F progress note dated May 20, 2020, stating A.W. was doing "quite well"); 1395 (NP Shepard reporting at October 18, 2019 well-child check that A.W.'s skin was clear other than for eczema), but expresses no opinion as to whether Plaintiff can establish at least a marked limitation in the domain of health and physical well-being for a closed period of disability, *i.e.*, a continuous period of at least 12 months. *See Sandra Lee M. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 277, 283 (W.D.N.Y. 2021) ("A closed period of disability refers to when a claimant is found to be disabled for a finite period of time which started and stopped prior to the date of the administrative decision granting disability status."). *See also Cheryl F. v. Comm'r of Soc. Sec.*, 2024 WL 1285491, at *14 n. 28 (W.D.N.Y. Mar. 26, 2024) (noting the ALJ properly considered, *sua sponte*, whether substantial evidence in the administrative record warranted finding the claimant was entitled to a closed period of disability).

supplement hearing, however, Dr. Anderson was unable to opine as to the impact of such conditions on the domain of health and physical well-being.  AR at 693 (testifying at second hearing that "I really don't have an opinion on that."); 660 (testifying as first supplemental hearing with regard to A.W.'s skin picking and hair pulling that "there is not enough detail on that issue [health and physical well-being] to make a rating."). Accordingly, the administrative record remains devoid of any evidence from which the ALJ could determine whether A.W.'s excoriation disorder and trichotillomania had at least a marked effect on Plaintiff's physical and general well-being domain, requiring remand to the Commissioner for further development of the record on this same issue.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 7) is GRANTED; Defendant's Motion (Dkt. 9) is DENIED.  The matter is REMANDED for further proceedings consistent with this Decision and Order.  The Clerk of Court is DIRECTED to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    September 15, 2025
            Buffalo, New York